UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SAMUAL A. PALAZZO,

                Plaintiff,

v.

COUNTY OF NIAGARA, et al.,

                Defendants.

---

1:24-CV-626 JLS (MJR)

REPORT AND RECOMMENDATION

This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, by the Honorable John L. Sinatra, Jr. (Dkt. No. 4) Before the Court is a motion by defendants Martin Derkovitz and Jacob Wackowski to dismiss the amended complaint. (Dkt. No. 14) For the following reasons, it is recommended that defendants' motion to dismiss be denied.

## BACKGROUND

Plaintiff commenced this lawsuit in New York State Court, County of Niagara, on June 6, 2024, alleging that defendants County of Niagara, the Niagara County Sheriff's Department, and Niagara County Sheriff's Deputies Derek Pacheco, Aaron Coney, and Mitchell Pegan (hereafter the "Niagara County defendants") subjected him to excessive force and otherwise violated his constitutional rights during a traffic stop and arrest on May 1, 2023, in violation of 28 U.S.C. § 1983 and New York state law. (Dkt. No. 1) The Niagara County defendants removed the lawsuit to the Western District of New York on July 2, 2024. (Id.) On July 15, 2024, the Niagara County defendants filed an answer to

the complaint, and the matter was subsequently referred to the undersigned. (Dkt. Nos. 3, 4) Plaintiff filed an amended complaint (the "AC") on September 6, 2024, which added defendants New York State Police Troopers Martin Derkovitz and Jacob Wackowski. (Dkt. No. 8) The Niagara County defendants filed an answer to the AC on October 1, 2024. (Dkt. No. 10)

On November 1, 2024, defendants Derkovitz and Wackowski filed a motion to dismiss the AC, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 14) Plaintiff filed a response in opposition (Dkt. No. 15) and defendants filed a reply (Dkt. No. 18). The Court heard oral argument on January 22, 2025.

## APPLICABLE LEGAL STANDARD

In order to state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, (2009); *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When evaluating a motion to dismiss, a court must accept as true the factual allegations contained in a complaint and draw all inferences in plaintiff's favor. *See Allaire Corp. v. Okumus* 433 F.3d 248, 249-50 (2d Cir. 2006). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 662. "Determining whether a complaint states a plausible claim for relief...requires the...court to draw on its judicial experience and common sense." *Id*. at 679.

## THE AMENDED COMPLAINT[1]

At approximately 8:00 p.m. on or about May 1, 2023, in front of 6131 Old Beattie Road, Lockport, New York, Samual Palazzo was pulled over for a "routine traffic stop." (Dkt. No. 8, ¶ 16) Within seconds of the stop, Niagara County Sheriff's Deputies Derek Pacheco, Aaron Coney, and Mitchell Pegan forcefully pulled Palazzo from his vehicle and shoved him to the ground when Palazzo inquired about the reason for the stop. (*Id.* at ¶ 17) New York State Troopers Martin Derkovitz and Jacob Wackowski arrived on the scene. (*Id.* at ¶ 18) Troopers Derkovitz and Wackowski, along with Deputies Pacheco, Coney, and Pegan, "excessively struck [Palazzo] while he was on the ground and pushed on his head and face." (*Id.*) Pacheco, Coney, Pegan, Derkovitz, and Wackowski pressed Palazzo's head against the ground, pressed their knees into the back of Palazzo's neck, and restrained his legs. (*Id.* at ¶ 23) Palazzo suffered bruising to his left eye and face, a left knee laceration and swelling, road rash, and headaches. (*Id.* at ¶ 18)

Pacheco, Coney, Pegan, Derkovitz, and Wackowski arrested Palazzo for operating an unregistered motor vehicle.[2] (*Id.* at ¶ 21, ¶ 49) The arrest was made absent exigent circumstances, a warrant, or probable cause. (*Id.* at ¶¶ 47-50) During the encounter with defendants, Palazzo did not pose an immediate threat to the officers and was not resisting arrest. (*Id.* at ¶¶ 21-23) Thus, no reasonable officer could or would have believed that the force used by defendants was lawful or within the bounds of reasonable discretion. (*Id.* at ¶ 25)

---

[1] For purposes of the instant motion to dismiss, the Court assumes as true all facts alleged in the AC.
[2] The AC specifically alleges that the "defendant deputies and/or troopers arrested plaintiff." (Dkt. No. 8, ¶ 49)

3

Palazzo asserts the following claims: (1) excessive force and unlawful arrest, in violation of Section 1983, against Pacheco, Coney, Pegan, Derkovitz, and Wackowski; (2) failure to intervene, in violation of Section 1983, against Pacheco, Coney, Pegan, Derkovitz, and Wackowski; (3) failure to train, supervise, discipline, and control Pacheco, Coney, and Pegan, against Niagara County and the Niagara County Sheriff's Department, in violation of New York state law; (4) false arrest against Pacheco, Coney, Pegan, Derkovitz and Wackowski; (5) assault against Pacheco, Coney, Pegan, Derkovitz, and Wackowski, in violation of New York state law; (6) a *Monell* claim against Niagara County and the Niagara County Sheriff's Department; (7) a claim of "supervisory liability" for deprivation of constitutional rights, in violation of Section 1983, against all defendants; and (8) a general negligence claim against all defendants. (*Id.* at ¶¶ 21-86)

## DISCUSSION

*The AC sufficiently alleges personal involvement by defendants.*

Defendants Derkovitz and Wackowski argue that they must be dismissed from the AC on account of improper group pleading. Specifically, defendants contend that the AC runs afoul of Rule 8 of the Federal Rules of Civil Procedure by "lumping all defendants in each claim" and failing to delineate which defendants were personally involved in the alleged deprivations of plaintiff's constitutional rights.

The personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under Section 1983. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). A plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Generally, "[p]leadings that do not differentiate which defendant was involved in the

4

unlawful conduct are insufficient to state a claim." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017). *See also Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (explaining that "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff]'s complaint failed to satisfy th[e] minimum [pleading] standard"); *Wright v. Orleans County*, 14-CV-0622, 2015 WL 5316410, at *13 (W.D.N.Y. Sept. 10, 2015) (noting that "[g]roup pleading [in a Section 1983 case] is insufficient for purposes of Rule 8(a)(2) which requires a short and plain statement of the claim showing that the pleader is entitled to relief") (citation and internal quotation marks omitted).

However, depending on the context of the claim, this rule has been relaxed. "For example, in situation[s] involving [an] alleged assault by a group of police officers or corrections officers, courts do not insist that the complaint set forth in detail the actions of each officer where it would be unreasonable to expect the plaintiff to be able to do so." *O'Brien v. City of Syracuse*, 5:22-CV-948, 2023 WL 6066036, *7 (N.D.N.Y. Sept. 18, 2023); *quoting Bryant v. Monroe Cnty.*, 19-CV-6474, 2022 WL 119184, *10 (W.D.N.Y. Jan. 12, 2022).

In *Messina v. Mazzeo*, 854 F. Supp. 116 (E.D.N.Y. 1994), plaintiff alleged that seven named police officers violated his Fourth Amendment rights by subjecting him to excessive force in the course of an arrest. Despite the lack of specificity as to which defendant did what, the court declined to dismiss the claim. The court reasoned that because plaintiff specifically alleged that each individual officer was personally involved in the use of excessive force that gave rise to the violation, plaintiff satisfied the "constitutional[] imperative that defendants are put on notice as to the nature of the

5

allegations against them." *Id*. at 126. The court further emphasized that since plaintiff was alleging use of excessive force during an arrest, "[i]t would be asking too much for an arrestee to remember and plead the role each of several police officers played in [this] alleged instance of police brutality." *Id*. Likewise, in *Bryant v. Monroe County*, 19-CV-6474, 2022 U.S. Dist. LEXIS 6392 (W.D.N.Y. Jan. 11, 2022), the court refused to dismiss a Section 1983 excessive force claim, based on lack of specificity, where plaintiff alleged that two named defendants and various unnamed officers "each assaulted, battered and/or used excessive force against [him] during an arrest…[and] [a]lternatively, the [c]omplaint contend[ed] that each of those same officers failed to protect [p]laintiff from the other officers who were unlawfully attacking him." (*Id*.)

The allegations here are analogous to those in *Messina* and *Bryant*. According to the AC, Deputies Pacheco, Coney, and Pegan pulled plaintiff out of his car during a routine traffic stop and shoved him to ground when he inquired about the reason for the stop. Plaintiff alleges that Troopers Derkovitz and Wackowski then arrived on the scene. He alleges that Derkovitz and Wachowski, together with Pacheco, Coney, and Pegan, all used excessive force against him, including striking him while he was on the ground, pressing their knees into the back of his neck, and restraining his legs. Plaintiff also alleges that each of the named individual defendants failed to intervene upon seeing the other named defendants violating his constitutional rights.

In sum, plaintiff alleges that all of the individual defendants subjected him to excessive force and that all of the individual defendants failed to intervene when they witnessed their fellow officers engaging in excessive force. Thus, Derkovitz and Wackowski have been provided "fair notice of what the plaintiff's claim[s] [are] and the

6

grounds on which [they] rest[]." *Buari v. City of New York*, 530 F. Supp. 3d 356, 390-91 (S.D.N.Y. 2021); *McClean v. Cty. of Westchester*, 17-CV-4492, 2018 U.S. Dist. LEXIS 204269 (S.D.N.Y. Dec. 3, 2018) ("Whether a complaint should be dismissed based on impermissible group pleading hinges on whether adequate notice is given that will enable the adverse party to answer and prepare for trial and identify the nature of the case.") (internal citations and quotations omitted).

For these reasons, the Court concludes that the excessive force and failure to intervene claims should not be dismissed against Troopers Derkovitz and Wackowski for failure to allege personal involvement. *See Logan v. City of Schenectady*, 18-CV-01179, 2019 U.S. Dist. LEXIS 136196 (N.D.N.Y. Aug. 13, 2019) (refusing to dismiss complaint based on plaintiff's "group pleading" argument where plaintiff "alleged that the Individual Defendants were *all* involved in the *same* unlawful conduct"); *Boehner v. City of Rochester*, 609 F. Supp. 3d 220 (W.D.N.Y. 2022) (declining to dismiss failure to intervene claim because it was possible that a "defendant directly participated in one constitutional violation while he failed to intervene in another" and because a plaintiff is permitted to plead alternative claims); *Vesterhalt v. City of New York*, 667 F. Supp. 2d 292, 297 (S.D.N.Y. 2009) ("A plaintiff need not establish which officer, among a group of officers, directly participated in the attack and which failed to intervene.").

The same is true with regard to plaintiff's claim of false arrest. Plaintiff alleges that "the deputies and/or troopers arrested [him]" absent exigent circumstances, a warrant, or probable cause. (Dkt. No. 8, ¶¶ 47-49) These allegations are, to be sure, sparse. However, they indicate that Derkovitz and Wackowski were both present at the scene of plaintiff's arrest and that they participated in the arrest in some manner. In *Folk v. City of*

*New York*, 243 F. Supp. 3d 363 (E.D.N.Y. 2017), the court declined to dismiss a false arrest claim against a group of individual defendants based on plaintiff's failure to describe each individual defendant's specific role in her arrest. The court acknowledged that while the facts in the complaint were "somewhat meager," plaintiff alleged that all of the individual defendants were present on the scene of her arrest and that each individual defendant "directly participated or failed to intervene in the violation of [her] rights." *Id.* at 370. Like in *Folk*, the allegations here are minimally sufficient to state a claim at this early stage of the litigation, when the Court must assume all facts in the AC to be true and must draw all reasonable inferences in plaintiff's favor. *See e.g., Vett v. City of New York*, 20-CV-2945, 2022 U.S. Dist. LEXIS 2350, *24 (S.D.N.Y. Jan. 5, 2022) (allegations that defendant "merely participated" in plaintiff's arrest were sufficient to state a claim); *Johnson v. Persinger*, 18-CV-1152, 2022 U.S. Dist. LEXIS 48069 (W.D.N.Y. Mar. 17, 2022) (plaintiff's allegations that defendant "took part in" his arrest and seized his property support the inference that defendant was present at the arrest and participated in it).

In order to be successful at the later stages of this lawsuit, plaintiff will have to prove personal involvement by each named defendant in each cause of action. Moreover, discovery will likely uncover the exact role each officer played in the use of force and the arrest. It may be the case that one or more of the individual defendants are able to successfully raise the argument, at the dispositive motion stage, that they had no personal involvement in the deprivation of plaintiff's constitutional rights. But for the reasons just stated, dismissal at this time is not warranted.[3]

---

[3] Defendants argue that in addition to failure to plead personal involvement, the claims in the AC are insufficient because they are "replete with legal conclusions." The Court rejects this argument and finds, for all the reasons just stated, that the AC sufficiently alleges claims of excessive force, failure to intervene, and false arrest against defendants Derkovitz and Wackowski.

8

*The AC sufficiently alleges lack of probable cause.*

Troopers Derkovitz and Wackowski argue that the false arrest claims must be dismissed because it was objectively reasonable for them to rely on their fellow law enforcement officers to establish probable cause for plaintiff's arrest. For the following reasons, the Court disagrees.

Probable cause is a complete defense to an action for false arrest. *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021). "Probable cause requires an officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotations and citations omitted). "When determining whether probable cause exists[,] courts must consider those facts available to the officer at the time of the arrest and immediately before it" and must consider the "totality of the circumstances." *Id*. at 395 (emphasis omitted) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002). "The fellow officer rule, known as the collective knowledge doctrine, allows one officer to make an arrest based on an instruction or information passed from one officer to another." *Cordero v. City of New York*, 282 F. Supp. 3d 549 (E.D.N.Y. 2017). The probable cause decision "does not rest on whether the instructing officer's observations were accurate, but on whether the arresting officer was reasonable in relying on those observations." *Id*.

Here, the AC alleges that the officers lacked probable cause to arrest Palazzo. Indeed, "the collective knowledge doctrine has no application to cases in which no officer possessed enough information to establish probable cause." *David C. Singh v. Petro.*, 21-CV-813, 2025 U.S. Dist. LEXIS 52815 (W.D.N.Y. Mar. 21, 2025). *See also United*

9

*States v. Colon*, 250 F.3d 130, 136 (2d Cir. 2001) (explaining that "application of the imputed knowledge doctrine requires that at some point along the line, some law enforcement official—or perhaps some agglomeration of such officials—involved...possess[ed] sufficient information to permit the conclusion that a search or arrest [wa]s justified").[4]

Troopers Derkovitz and Wackowski contend that, in the course of plaintiff's arrest, they were "acting upon information and belief" from Deputies Pacheco, Coney, and/or Pegan. This case is at the pleadings stage. There is no evidence before the Court as to what information, if any, was conveyed to Troopers Derkovitz and Wackowski by their fellow officers when they arrived at the scene prior to plaintiff's arrest. *See Jackson v. City of New York*, 939 F. Supp. 2d 235, 256 (E.D.N.Y. 2013) ("The 'fellow officer rule' is typically invoked in cases where the record is clear as to what the officer seeking backup reported."); *Giles v. City of Mt. Vernon*, 20-CV-05119, 2024 U.S. Dist. LEXIS 6019 (S.D.N.Y. Jan. 10, 2024) (refusing to dismiss unlawful arrest claim where there was no dispute that defendant's arrest of plaintiff was predicated on information provided by another officer, but the parties disputed exactly what details were conveyed to defendant and whether defendant had reason to doubt the other officer's truthfulness).

---

[4] In his response to the motion to dismiss, plaintiff attaches a Niagara County Sheriff Field Case Report detailing his stop and arrest on May 1, 2023. (Dkt. No. 15-2) The Case Report, authored by Deputy Pacheco, indicates that a DMV inquiry revealed that the registration for plaintiff's vehicle expired on February 2, 2023 and that the vehicle's inspection expired on April 30, 2022. (*Id.*) The Case Report also states that plaintiff refused to comply with Deputy Pacheo's instructions and resisted arrest. (*Id.*) The Case Report states that plaintiff was charged with operating an unregistered motor vehicle, operating an uninspected motor vehicle, obstructing governmental administration, and resisting arrest. (*Id.*) Contrary to the description of the incident described in the Case Report, the AC alleges that plaintiff did not resist arrest, did not pose a threat to the officers, and that he was arrested absent a warrant, probable cause, or exigent circumstances. In light of the early stage of this lawsuit, when the Court must assume all allegations in the AC to be true and draw all reasonable inferences in plaintiff's favor, there are questions of fact as to what occurred during the traffic stop and whether defendants had probable cause to arrest plaintiff.

Upon discovery, it may be clear that Troopers Derkovitz and Wackowski reasonably relied on information provided by Deputies Pacheco, Coney, and Pegan during the course of plaintiff's arrest, and therefore are not liable for violating plaintiff's constitutional rights. However, it is too early in the lawsuit to make such a determination.

<u>*Defendants are not entitled to qualified immunity at this time*</u>.

"Qualified immunity shields officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Rupp v. City of Buffalo*, 91 F.4th 623, 642 (2d Cir. 2024) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, where probable cause to arrest does not exist, an officer may be entitled to qualified immunity as to a Section 1983 false arrest claim if the officer's actions were "objectively reasonable" or if "arguable probable cause" existed at the time of the arrest. *Triolo v. Nassau County*, 24 F.4th 98, 107 (2d Cir. 2022) (accord *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016)). "A police officer has arguable probable cause 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Figueroa*, 825 F.3d at 100 (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013)).

"Although a defendant may assert the defense of qualified immunity in a motion to dismiss, the Second Circuit has held that it is very difficult for such a defense to succeed at the pleadings stage." *Collins v. Ferguson*, 804 F. Supp. 2d 134, 140 (W.D.N.Y. 2011). Indeed, the Second Circuit has explained that while qualified immunity should be resolved "at the earliest possible stage in litigation", it cannot be resolved "prior to the

11

ascertainment of the truth of the plausible factual allegations on which a finding of qualified immunity is premised." *Chamberlain v. City of White Plains*, 960 F.3d 100 (2d Cir. 2020) (internal citations and quotations omitted). "And since qualified immunity is an affirmative defense that is typically asserted in an answer…as a general rule, 'the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion[.]'" *Id.* (quoting *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983). Instead, qualified immunity is appropriate at the motion to dismiss stage only if "the facts supporting the qualified immunity defense…appear on the face of the complaint." *Pourkavoos v. Town of Avon*, 823 F. App'x 53, 59 (2d Cir. 020) (summary order) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). Moreover, a plaintiff is "entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna*, 386 F.3d at 436.

Defendants contend that, at a minimum, arguable probable cause existed to support plaintiff's arrest. Defendants point to a Niagara County Sheriff's Office Field Case Report indicating that Palazzo was pulled over for driving with an expired vehicle registration and an expired vehicle inspection. The Case Report further indicates that Palazzo was "hostile and argumentative" and refused to comply with law enforcement commands. However, the AC alleges that there was no probable cause to arrest Palazzo, that he did not resist arrest, and that he did not pose a threat to the officers. Palazzo alleges that he was pulled out of his vehicle immediately after he inquired about the reason for the stop and that he was immediately subjected to excessive and unnecessary force. Viewing the allegations in the AC as true and in a light most favorable to plaintiff, there are questions of fact as to the circumstances and validity of plaintiff's arrest. As to

Troopers Derkovitz and Wackowski in particular, it is still unknown exactly when they arrived on the scene, what they observed upon their arrival, and what information was provided to them by their fellow officers. Thus, "whether [plaintiff] is correct that his arrest was unreasonable, or [defendants] are correct that they acted reasonably in arresting [plaintiff] is not something that this Court can resolve on a motion to dismiss." *Singh*, 2025 U.S. Dist. LEXIS 52815, *20.

Defendants may indeed be entitled to qualified immunity. But at this stage, the Court cannot determine either the factual circumstances of plaintiff's arrest or Wackowski and Derkovitz's specific involvement in the arrest. Therefore, the Court cannot make a finding as to whether qualified immunity applies. Such a determination must be left to summary judgment or trial. *See Ndoye v. City of New Rochelle*, 23-CV-03805, 2024 U.S. Dist. LEXIS 14449 (S.D.N.Y. Jan. 26, 2024) (holding that "[t]he reasonableness of [an officer's] reliance on the information he received" from another source in deciding to arrest plaintiff was "a fact question not appropriate for resolution on the pleadings"); *Colon v. City of Rochester*, 419 F. Supp. 3d 586, 598-99 (W.D.N.Y. 2019) (denying police officers' motion to dismiss false arrest claims on qualified immunity grounds and stating that "the arrests [may have been] justified, or the officers may reasonably have believed them to have been justified[, but] the [c]ourt cannot make a determination in that regard on a motion to dismiss").

## CONCLUSION

For the foregoing reasons, it is recommended that defendants Martin Derkovitz and Jacob Wackowski's motion to dismiss be denied. (Dkt. No. 14)

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See* Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED.**

Dated:      June 30, 2025
            Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge